**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KENNETH A. BARTON, et al., | Civil Action No.: 10-3657 |
| Plaintiffs, | |
| v. | **OPINION** |
| RCI, LLC, | |
| Defendant. | |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendant RCI, LLC's ("Defendant") motion to dismiss ("Defendant's Motion"). On or about July 20, 2010, Plaintiffs Kenneth A. Barton, et al. ("Plaintiffs") filed a class action complaint ("Plaintiffs' Complaint"). Plaintiffs set forth five causes of action in Plaintiffs' Complaint: (1) a violation of the New Jersey Consumer Fraud Act (the "NJCFA"); (2) breach of the implied covenant of good faith and fair dealing; (3) punitive damages; (4) breach of contract; and (5) a violation of the New Jersey Plain Language Act (the "NJ Plain Language Act"). On or about September 8, 2010, Defendant filed Defendant's Motion.

For the reasons set forth below, this Court denies Defendant's Motion.

**I**

Plaintiffs are residents of New Jersey, Virginia, Mississippi, California, Illinois, Michigan, Nevada, and New York. Defendant, a limited liability company that maintains its principal place of business in New Jersey, operates a vacation exchange business.

1

Defendant offers its members the ability to exchange timeshare intervals for "points" (also known as "point values") (the "Points Program"). Pursuant to the Points Program, these members can then exchange these point values for a variety of services ("Partner Inventory"), including car rentals and airline tickets. Plaintiffs maintain:

> The ability to exchange points for international and domestic airfare was a particularly attractive aspect of the pitch because the upfront and total cost of acquiring plenty of points to acquire airfare over many years was less than the out-of-pocket costs one would have to pay on the open market for such airline tickets.

Plaintiffs allege that Defendant sold memberships into the Points Program in conjunction with Plaintiffs' purchase of intervals of vacation time at a resort in the Blue Bay family of resorts (a "Blue Bay Resort"). According to Plaintiffs, after Plaintiffs purchased an interval of vacation time at a Blue Bay resort, the interval of vacation time was assigned a point value. Plaintiffs were then able to use this point value to obtain vacations elsewhere or obtain airline tickets. According to Plaintiffs, Plaintiffs were especially drawn to the Points Program because of the ability to obtain airline tickets.

Plaintiffs attended a sales pitch to join Defendant's Points Program at a Blue Bay Resort. Plaintiffs were handed portfolios containing information about the Points Program, and sales associates – whom Plaintiffs believed to be authorized representatives of Defendant's Points Program – provided a presentation. According to Plaintiffs, the sales associates reinforced the idea of using the Points Program to create customized vacations. After Plaintiffs purchased nights at a Blue Bay Resort, the sales associates gave Plaintiffs two separate contracts to sign – one contract from Blue Bay Resorts (the "Blue Bay Contracts") and one contract from RCI (the "RCI Contracts"). Plaintiffs also received a document titled "How to Use Your Points," which noted the ease with

which Plaintiffs could use accumulated point values.

According to Plaintiffs, the vacation time at a Blue Bay Resort held no independent value for Plaintiffs. Rather, Plaintiffs maintain that "[t]he sole reason Plaintiffs purchased Blue Bay nights was to acquire points to be able to obtain international airfare, domestic airfare and customized vacations through RCI's Points Program and Partner Inventory . . . ."

Plaintiffs contend that prior to June 2008, Defendant complied with all obligations under the Points Program. In the summer of 2008, however, Defendant began to deny Plaintiffs' attempts to exchange accumulated point values for Partner Inventory. In September 2008, Defendant mailed to all members who joined the Points Program through a Blue Bay Resort prior to February 29, 2008 a letter notifying all such members that Defendant was unilaterally imposing a 60,000 annual point value limit cap on Partner Inventory redemptions (the "Points Limit Cap Letter"). According to Plaintiffs, 60,000 points can be redeemed for approximately one domestic one-way flight. Defendant stated in the Points Limit Cap Letter that Defendant was imposing the cap for several reasons, including "to preserve the integrity of the RCI network."

According to Plaintiffs, the 60,000 annual point limit cap "render[ed] the millions of points Plaintiffs . . . purchased essentially worthless and deprive[d] [Plaintiffs] of the benefit of their bargain."

## II

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept as true all allegations in the pleading and all reasonable inferences that can be drawn therefrom, and must view such allegations and inferences in the light most favorable to the non-moving party. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50

3

(2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). A cause of action should be dismissed only if the alleged facts, taken as true, fail to state a claim. *See Iqbal*, 129 S. Ct. at 1950.

While a court will accept well-pled allegations as true for the purposes of the motion to dismiss for failure to state a claim, a court will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Iqbal*, 129 S. Ct. at 1949; *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). On the contrary, "[t]he pleader is required to 'set forth sufficient information to outline the elements of [its] claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). A party must set forth "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citation omitted).

## III

Plaintiffs allege five causes of action in Plaintiffs' Complaint: (1) a violation of the NJCFA; (2) breach of the implied covenant of good faith and fair dealing; (3) punitive damages; (4) breach of contract; and (5) a violation of the NJ Plain Language Act. Defendant moves to dismiss all five causes of action.

A Violation of the NJCFA

**New Jersey Law Applies to Plaintiffs' Claims.**

As a preliminary matter, Defendant contends that non-New Jersey residents cannot assert a violation of the NJCFA because such allegations of fraud "[have] no connection to New Jersey." Plaintiffs refute this argument, noting that the RCI Contracts specifically indicate that New Jersey law applies to any dispute. One of the RCI Contracts that Plaintiffs attached to Plaintiffs' Complaint

states: "These Terms and Conditions and the Network shall be governed by the laws of the State of New Jersey." Moreover, Defendant attached contracts[1] to Defendant's Motion which provide: "These Terms and Conditions and the Network will be governed by and construed under the laws of the State of New Jersey, except for its conflict of law principles."

"Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Homa v. Am. Express Co.*, 558 F.3d 225, 227 (3d Cir. 2009) (*quoting Instructional Sys., Inc. v. Computer Curriculum Corp.*, 130 N.J. 324 (1992)). A contractual phrase indicating that a particular state's law "governs" a matter indicates that the particular state's law applies to both contract and tort claims. *See Demmick v. Cellco P'ship*, 2010 WL 3636216, at *3 (D.N.J. Sept. 8, 2010) ("Plaintiffs cite to no case holding that a contract using only the term 'governed by' is narrow . . . ."). Similarly, the phrase "governed and construed by" is sufficiently broad to "captur[e] both contract and tort claims, particularly tort claims that relate to the contract." *Pro v. Hertz Equip. Rental Corp.*, 2008 WL 5218267, at *5 (D.N.J. Dec. 11, 2008) (citations omitted). To the contrary, however, where a choice of law provision is "narrowly drafted to apply only to the constru[ction] and enforce[ment] of [an] [a]greement, [then the provision] *does not* apply to all claims arising out of the parties' [] relationship." *See Shapiro v. Barnea*, 2006 WL 3780647, at *4 n.2 (D.N.J. Dec. 21, 2006) (emphasis added).[2]

---

[1] Even though Plaintiffs did not attach these two contracts to Plaintiffs' Complaint, this Court still may evaluate these contracts in deciding Defendant's Motion. *See U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (citations omitted).

[2] Defendant also cites a Second Circuit decision for the proposition that under New York

Here, no version of the RCI Contracts appears "narrowly drafted to apply only to the construction and enforcement" of the RCI Contracts. *Shapiro*, 2006 WL 3780647 at *4. The RCI Contracts provide that the "Network" must be "governed by the laws of the State of New Jersey" or "governed by and construed under the laws of the State of New Jersey." The "Network" is broadly defined under the RCI Contracts as "the Reservation System operated by the Network Administrator pursuant to which subscribing Members may make Reservations of Vacation Time and Units of Partner Inventory" and "the RCI Points exchange program including the Reservation System and the variety of RCI Points transaction services including exchange, reservation and use services and related benefits made available to Members from time to time in the discretion of the Network Administrator and all systems and operations related thereto." Here, this entire case appears to revolve around alleged misrepresentations regarding access to units of Partner Inventory. As such, it is evident that the choice-of-law clauses encompass both the contract and tort claims at issue.[3]

Defendant argues that even if the choice-of-law clauses apply to Plaintiffs' consumer fraud claim, this Court should refuse to honor the choice-of-law provisions. A court can disregard a choice-of-law clause in certain circumstances:

---

law, "tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract." *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 335 (2d Cir. 2005).

[3]

Moreover, it is well-established that "a contract is to be construed most strictly against the drafter." *John F. Harkins Co., Inc. v. Waldinger Corp.*, 796 F.2d 657, 668 (3d Cir. 1986). Here, Defendant had the opportunity to specifically delineate what forms of limited litigation would be evaluated under New Jersey law. Defendant failed to do so. Defendant cannot now "circumvent the broad choice of law clause in [Defendant's] own form contract." *Pro*, 2008 WL 5218267 at *5.

6

> Under New Jersey law, if the parties to a contract agree that a particular state's law will govern their rights and duties under the contract, the courts will generally honor the agreement, unless:
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd.*, 847 F. Supp. 1244, 1248 (D.N.J. 1994) (*citing* Restatement (Second) of Conflict of Laws § 187; other citation omitted).

Defendant fails to explain why either subsection (a) or subsection (b) applies. In fact, the principal cases upon which Defendant relies do not even apply this standard. *See Laney v. Am. Standard Cos., Inc.*, 2010 WL 3810637 (D.N.J. Sept. 23, 2010); *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437 (D.N.J. 2009); *Clark v. Prudential Ins. Co. of Am.*, 2009 WL 2959801 (D.N.J. Sept. 15, 2009).

Moreover, the *Newcomb* case – in which the court did actually undertake the analysis above – is distinguishable. In *Newcomb*, the court held that a choice-of-law clause would not be enforced because "[j]udicial enforcement of a choice of law provision [] would permit attorneys to circumvent the strong public policy of the State of New Jersey in protecting its citizens." 847 F. Supp. at 1249. In *Newcomb*, enforcement of the law that was set forth in the choice-of-law clause – Pennsylvania law – provided less protection than would the application of the desired alternative state's law – New Jersey law. *See id.* at 1249. Here, enforcement of the law set forth in the instant choice-of-law clauses – New Jersey law – would provide the broad consumer protection for which Plaintiffs contracted. *See generally Smith v. Trusted Universal Standards in Elec. Transactions*, 2011 WL

900096, at *13 (D.N.J. Mar. 15, 2011) ("In order to further its remedial purpose, the NJCFA is construe[d] liberally to accomplish its broad purpose of safeguarding the public.") (internal quotation marks and citation omitted).

Lastly, it is worth noting that Defendant did not satisfy its burden of demonstrating that despite the existence of the choice-of-law clauses, New Jersey law should *not* govern the non-New Jersey residents' claims. Defendant devoted *less than a page* of Defendant's reply brief to this analysis. Moreover, *Defendant did not even mention the choice-of-law clauses* in Defendant's moving brief. Furthermore, Defendant failed to explain in a step-by-step fashion in Defendant's reply brief why other states' law should apply. In particular, Defendant failed to note why: (a) "the application of [New Jersey] law would be contrary to a fundamental policy of [certain states]"; (b) [certain states] [have] a materially greater interest than [New Jersey] in the determination of the particular question at issue;" and (3) "under the general choice of law considerations of § 188 of the Restatement (Second) of Conflict of Laws, [certain other states'] law[s] would apply." *See Christy v. We The People Forms and Serv. Ctrs., USA, Inc.*, 213 F.R.D. 235, 240 (D.N.J. 2003) (citation omitted).

This minimal effort by Defendant is insufficient, and does not convince this Court to turn a blind eye to the choice-of-law clauses, written by Defendant, and for which Plaintiffs contracted. Because this is a motion to dismiss for failure to state a claim, Defendant – as the moving party – bears the burden of convincing this Court that New Jersey law is inapplicable to the non-New Jersey residents' claims. *See generally Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted). Defendant fails to carry this burden, and thus this Court finds that New Jersey law applies to Plaintiffs' NJCFA cause of action.

**Plaintiffs Adequately Plead a Violation of the NJCFA**

The NJCFA provides in pertinent part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser.

N.J.S.A. § 56:8-2. More specifically, a claimant states a viable NJCFA claim where the claimant alleges: (1) unlawful conduct by an opposing party; (2) an ascertainable loss by the claiming party; and (3) a causal relationship that exists between the unlawful conduct and the ascertainable loss. *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 514 (D. N.J. 2009). "Plaintiffs' NJCFA claim must contain specific allegations of [Defendant's] unlawful conduct, subject to the heightened pleading requirements of [Rule 9(b) of the Federal Rules of Civil Procedure]." *Arcand v. Brother Intern. Corp.*, 673 F. Supp. 2d 282, 296 (D.N.J. 2009).

Plaintiffs adequately plead that Defendant engaged in unlawful conduct with respect to its representations regarding the Points Program. Plaintiffs state: "RCI's printed materials highlighted the ability to exchange points for worldwide destinations and listed international and domestic airlines, such as [Lufthansa] and many others, as readily accessible means for traveling to the desired destination through exchanging points." In addition, Plaintiffs contend that "[t]he on-site sales staff

pitch reinforced the themes reflected in RCI's written materials." Moreover, Plaintiffs represent the following:

> RCI's affiliate staff also presented each Plaintiff with a document titled, "How to Use Your Points." *This document notes the ease of transferring points for use with RCI's Points Program and does not state, suggest, imply or indicate that there is or might be a limit to the amount of points that can be exchanged in any given transaction or year.*

(emphasis added).

The NJCFA is intended to "protect the public from sharp practices and dealings in [] marketing [] which could victimize the consumer by luring the consumer into a purchase through fraudulent, deceptive or other similar kinds of selling or advertising practices." *Strawn v. Canuso*, 271 N.J. Super. 88, 108 (App. Div. 1994) (citation omitted). Here, Plaintiffs' allegations fit squarely within this framework.

Defendant asserts that Defendant could not possibly have engaged in any "unlawful conduct" due to the fact that the RCI Contracts specifically provide Defendant with a unilateral right to amend the Points Program. This Court is not persuaded by this argument. A review of the RCI Contracts demonstrate that the RCI Contracts *do not* specifically provide for Defendant's unilateral right to place a cap on the Points Program. To the contrary, the RCI Contracts state only that "the Network Administrator shall have the right to take such actions . . . to ensure the continuing integrity of the Network. Such actions may include . . . restricting Members' ability to access Partner Inventory." It is highly doubtful that Plaintiffs knew what constituted "network integrity" at the time that Plaintiffs signed the RCI Contracts, and it therefore seems unlikely that Plaintiffs acknowledged that the Points Program could be capped in such a dramatic fashion.

Defendant additionally contends that Plaintiffs' NJCFA cause of action cannot proceed

because "Plaintiffs have failed to adequately plead facts to support an agency relationship." This Court disagrees. Plaintiffs emphasize that a critical part of the presentation regarding the Points Program was the "RCI-generated point-of-sale printed materials." Moreover, Plaintiffs believed that "the on-site sales associate was an authorized representative of RCI, and in fact, the sales associates were sometimes introduced as an RCI representative and often handed out RCI's promotional materials about RCI's Points Program." As such, Plaintiffs plead that Defendant was behind the alleged misrepresentations regarding Defendant's Points Program.

Plaintiffs also adequately state that Defendant caused Plaintiffs to suffer an "ascertainable loss." Consumers suffer an "ascertainable loss" whenever "they receive[] something less than, and different from, what they reasonably expected in view of [a] defendant's presentations." *Miller v. Am. Family Publishers*, 284 N.J. Super 67, 90-91 (Ch. Div. 1995); *see also Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617, 646 (App. Div. 2002) ("An ascertainable loss occurs when a consumer receives less than what was promised.") (citation omitted).

Here, Plaintiffs adequately contend that they suffered "an ascertainable loss" as a result of Defendant's misrepresentations. Plaintiffs specifically state in Plaintiffs' Complaint:

> Had RCI's printed materials and the sales pitch by RCI's affiliate indicated a 60,000 annual cap on redemptions for Partner Inventory, a reasonable person either would not have joined the RCI Points Program through the purchase of Blue Bay nights or would not have purchased as many points as were often purchased. Had RCI indicated a 60,000 annual cap for redemptions of Partner's Inventory, none of the Plaintiffs[] would have joined RCI's Point Program or purchased as many points as they did.

Moreover, Plaintiffs state that after the imposition of the unilateral cap on the redeemable points, the "actual value of Plaintiffs' [] points and RCI memberships is significantly less than the value as represented by RCI." This Court is therefore convinced that Plaintiffs adequately plead that

11

Plaintiffs suffered an "ascertainable loss."

Finally, this Court rejects Defendant's claim that the "economic loss" doctrine bars Plaintiffs' NJCFA cause of action. "The economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (internal quotation marks and citation omitted). "The distinction between fraud in the inducement and fraud in the performance of a contract remains relevant to the application of the economic loss doctrine in New Jersey." *Id.* at 563. Fraud claims can proceed alongside breach of contract claims where there exists "fraud in the inducement of a contract or an analogous situation based on pre-contractual misrepresentations." *Ibid.* (citations omitted).

The economic loss doctrine does not bar Plaintiffs' NJCFA cause of action. Plaintiffs emphasize throughout Plaintiffs' Complaint that the crux of Plaintiffs' case revolves around Defendant's pre-contractual representations regarding the Points Program: "[Plaintiffs] allege that RCI mislead [Plaintiffs] into believing that [Plaintiffs] should purchase millions of points to pre-pay for customized future vacations wherein [Plaintiffs] could obtain international and domestic airfare for far less money through the exchange of points than via the open market."

For the reasons set forth above, Plaintiffs satisfactorily allege that Defendant's misrepresentations regarding the Points Program proximately caused Plaintiffs to suffer an ascertainable loss. As such, Plaintiffs' NJCFA cause of action may proceed.

<u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

Every contract holds an implied covenant of good faith and fair dealing. *Palisades Props., Inc. v. Brunetti*, 44 N.J. 117, 130 (1965) (citation omitted). More specifically, every contract

contains "an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Ibid.* (internal quotation marks and citation omitted).

A breach of the implied covenant of good faith and fair dealing cause of action exists in part to "rectify an unfair exercise of discretion regarding its contract performance." *Barrows v. Chase Manhattan Mort. Corp.*, 465 F. Supp. 2d 347, 365 (D.N.J. 2006) (citation omitted). "[A] defendant who acts with improper purpose or ill motive can be found liable for breaching the implied covenant if the breach interferes with the plaintiff's reasonable expectations under the agreement." *Flaster/Greenberg P.C. v. Brendan Airways, LLC*, 2009 WL 1652156, at *9 (D.N.J. June 10, 2009) (citation omitted).

Plaintiffs seek to remedy the alleged unfettered discretion with which Defendant limited access to Partner Inventory. Plaintiffs allege that the *primary* reason that Plaintiffs entered into the RCI Contracts was to accumulate points that they could exchange for airline miles. In fact, Plaintiffs note that the right to stay at a Blue Bay resort did not hold any value for Plaintiffs.

Plaintiffs therefore adequately plead a breach of the implied covenant of good faith and fair dealing cause of action.

### Punitive Damages

In order to recover punitive damages, Plaintiffs must demonstrate that Defendant committed "an intentional wrongdoing in the sense of an 'evil-minded act' or an act accompanied by a wanton and wilful disregard of the rights of another." *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 49 (1984) (citation omitted). Defendant contends that punitive damages are not an appropriate remedy in breach of contract cases. This case, however, does not appear to be a standard breach of contract dispute. Again, Plaintiffs emphasize that this case revolves in large part around allegations

13

of fraud in the inducement. Punitive damages can be an appropriate remedy in cases in which a defendant induced a plaintiff to enter into a contract. *See Bell Atl. Network Servs., Inc. v. P.M. Video Corp.*, 322 N.J. Super. 74, 104 (App. Div. 1999). As a result, Plaintiffs' request for punitive damages may proceed.

### Breach of Contract

A breach of contract arises where: (1) a contract exists between the parties; (2) a party breaches the contract; (3) damages flow from the breach of the contract; and (4) the party alleging the breach of the contract satisfactorily performs its own obligations under the contract. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citation omitted).

Defendant argues that the express terms of the RCI Contracts authorize Defendant to limit access to Partner Inventory, and thus Defendant's imposed limitations on access to airline miles were permissible under the RCI Contracts. Plaintiffs contend, however, that such terms are "hopelessly ambiguous." Plaintiffs contend that Defendant never defined what exactly constitutes "network integrity." Plaintiffs note that the "network integrity" clause is supposed to be applicable to all "members," whereas, here, the effects of the modified terms affect only a discrete pocket of members. In particular, Plaintiffs note:

> RCI ignores the qualifier that its actions must be for the 'integrity of the Network' and contends that its discretion to restrict 'Members' access to Partner Inventory' equates to the unfettered power to eliminate the exchange of points for round-trip international and domestic airfare for the few thousand Blue Bay members out of the millions of Points Program participants.

This Court is convinced that confusion exists with respect to the application of the "network integrity" clause. "[I]t is hornbook law that if the relevant terms in a contract are ambiguous, the issue must go to a jury." *Emerson Radio Corp. v. Orion Sales*, Inc., 253 F.3d 159, 163 (3d Cir. 2001) (citation omitted). Because this Court is convinced at this early stage in the litigation that the

RCI Contracts are ambiguous, Plaintiffs' breach of contract cause of action may proceed.

### A Violation of the NJ Plain Language Act

The NJ Plain Language Act requires that a "consumer contract" must be "written in a simple, clear, understandable and easily readable way." *See* N.J.S.A. § 56:12-2. As mentioned throughout this Opinion, a critical phrase in the RCI Contracts – "network integrity" – is not "clear" or "understandable." *See* N.J.S.A. § 56:12-2. Defendant contends that Plaintiff Kenneth A. Barton's ("Mr. Barton") NJ Plain Language Act cause of action is fatally flawed because the NJ Plain Language Act does not apply to consumer contracts involving amounts greater than $50,000.00. *See* N.J.S.A. § 56:12-9. Mr. Barton paid $51,701.83 for his reserved nights at the Blue Bay Resorts.

Plaintiffs point out, however, that Mr. Barton acquired time intervals at the Blue Bay Resorts on four separate instances, and each instance alone cost Mr. Barton less than $50,000.00. As such, according to Plaintiffs, Mr. Barton did not sign any "consumer contracts involving amounts of more than $50,000.00," and therefore Mr. Barton's NJ Plain Language Act cause of action remains viable. *See* N.J.S.A. § 56:12-9. Defendant failed to rebut this strong argument in Defendant's reply papers. As a result, Plaintiffs – including Mr. Barton – may proceed with Plaintiffs' NJ Plain Language Act cause of action.

## IV

For the reasons set forth above, this Court denies Defendant's Motion.

*Peter M. Sheridan*

PETER G. SHERIDAN, U.S.D.J.

July __, 2011